Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JENNIFER HOLLAND,<br><br>     Plaintiff,<br><br>v.<br><br>GP STRATEGIES CORPORATION, SCOTT N. GREENBERG, ADAM H. STEDHAM, SAMUEL D. ROBINSON, TAMAR ELKELES, MARSHALL S. GELLER, STEVEN E. KOONIN, JACQUES MANARDO, and RICHARD C. PFENNIGER, JR.,<br><br>     Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Jennifer Holland ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.      This is an action against GP Strategies Corporation ("GP Strategies" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

1

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of GP Strategies by Learning Technologies Group plc ("Learning").

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the conduct giving rise to the claims occurred in New York City.

5.  In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.  Plaintiff is, and has been at all relevant times hereto, an owner of GP Strategies common stock.

7. Defendant GP Strategies provides performance improvement and learning solutions worldwide. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "GPX."

8. Defendant Scott N. Greenberg ("Greenberg") is Chairman of the Board of the Company.

9. Defendant Tamar Elkeles ("Elkeles") is a director of the Company.

10. Defendant Marshall S. Geller ("Geller") is a director of the Company.

11. Defendant Steven E. Koonin ("Koonin") is a director of the Company.

12. Defendant Jacques Manardo ("Manardo") is a director of the Company.

13. Defendant Richard C. Pfenniger, Jr. ("Pfenniger") is a director of the Company.

14. Defendant Samuel D. Robinson ("Robinson") is a director of the Company.

15. Defendant Adam H. Stedham ("Stedham") is Chief Executive Officer, President, and a director of the Company.

16. Defendants Greenberg, Elkeles, Geller, Koonin, Manardo, Pfenniger, Robinson, and Stedham are collectively referred to herein as the "Individual Defendants."

17. Defendants GP Strategies and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

18. On July 15, 2021, GP Strategies announced it had entered into a definitive agreement to be acquired by Learning for $20.85 per GP Strategies share in cash. The press release announcing the Proposed Transaction states, in pertinent part:

### GP Strategies Agrees to Merge with Learning Technologies Group, Creating One of the World's Largest Workforce Transformation Companies

All-cash consideration represents a premium of approximately 32% for GP Strategies stockholders

NEWS PROVIDED BY
**GP Strategies Corporation**
Jul 15, 2021, 11:47 ET

COLUMBIA, Md., July 15, 2021 /PRNewswire/ -- GP Strategies Corporation (NYSE: GPX), a global workforce transformation solutions provider, today announced it has entered into a definitive agreement to be acquired by Learning Technologies Group (AIM: LTG.L), a provider of services and technologies for digital learning and talent management, for $20.85 per GP Strategies share in cash, in a transaction valued at approximately $394 million.

\*     \*     \*

The transaction is expected to be completed during the fourth quarter of 2021, subject to GP Strategies shareholder approval, regulatory clearances, and other customary closing conditions. Upon closing of the transaction, GP Strategies will become a division of Learning Technologies Group and its shares will no longer be listed on the NYSE. The Company expects to continue to go to market with the GP Strategies brand and portfolio of offerings.

Sagard Capital Partners Management, GP Strategies' largest shareholder, supports the transaction and has entered into a voting and support agreement to vote its shares in favor of the transaction, subject to customary terms and conditions.

**Advisors**

Jefferies LLC is serving as exclusive financial advisor and Hogan Lovells is serving as legal adviser to GP Strategies in connection with the transaction.

Goldman Sachs International is serving as exclusive financial advisor, Numis Securities Limited is serving as debt advisor and DLA Piper is serving as legal advisor to Learning Technologies Group in connection with the transaction.

**About GP Strategies**

GP Strategies (NYSE: GPX) is a global workforce transformation provider of organizational and technical performance solutions. GP Strategies' solutions improve the effectiveness of organizations by delivering innovative and superior training, consulting, and business improvement services customized to meet the specific needs of its clients. Clients include Fortune 500 companies, automotive,

financial services, technology, aerospace and defense industries, and other commercial and government customers. Additional information can be found at gpstrategies.com.

**About Learning Technologies Group**

Learning Technologies Group (LTG) is a leader in the high-growth workplace learning and talent industry. The Group offers end-to-end learning and talent management solutions, from strategic consultancy, through a range of content and platform solutions, to analytical insights that enable corporate and government clients to close the gap between current and future workforce capability.

LTG is listed on the London Stock Exchange's AIM (LTG.L) and headquartered in London. The Group has offices in Europe, North America, South America and Asia-Pacific.

LTG's businesses, including LEO Learning, Gomo, PRELOADED, Rustici Software, PeopleFluent, Affirmity, Watershed, VectorVMS, Instilled, Reflektive, Bridge, PDT Global and Open LMS, are at the forefront of innovation and best practice in the learning technology and talent management sectors, and have received numerous awards for their exceptional performance. Our portfolio of brands represents the best of breed and is acknowledged throughout the industry as market leaders.

19. On August 24, 2021, the Company filed a Schedule 14A Definitive Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

20. The Proxy Statement, which recommends that GP Strategies shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) GP Strategies' financial projections; and (ii) the financial analyses performed by GP Strategies' financial advisor, Jefferies LLC ("Jefferies"), in connection with its fairness opinion.

21. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Board and GP Strategies' Reasons for the Merger; (ii) Opinion of Financial Advisor; and (iii)

5

Certain Unaudited Prospective Financial Information.

22. Unless and until the material misstatements and omissions (referenced below) are remedied before the September 28, 2021 shareholder vote on the Proposed Transaction, GP Strategies shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning GP Strategies' Financial Projections**

23. The Proxy Statement omits material information concerning GP Strategies' financial projections.

24. With respect to the "GP Strategies Forecasts," the Proxy Statement fails to disclose: (1) all line items underlying (i) Revenue, (ii) Adjusted EBITDA, (iii) EBIT, (iv) After-Tax EBIT, and (v) Unlevered Free Cash Flow; (2) GP Strategies' net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

25. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

26. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their

corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

27.   The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Jefferies' Analyses

28.   In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Jefferies.

29.   The Proxy Statement fails to disclose the following concerning Jefferies' "*Discounted Cash Flow Analysis*": (1) all line items underlying the stand-alone unlevered, after-tax free cash flows that GP Strategies was forecasted to generate during the six months ending December 31, 2021 and for the calendar years ending December 31, 2022 through December 31, 2025; (2) the terminal value of GP Strategies; (3) the individual inputs and assumptions underlying the (i) range of perpetuity growth rates of 3.0% to 4.0%, and (ii) discount rate range of 11.0% to 11.5%; (4) GP Strategies' net debt; (5) GP Strategies' net cash; and (6) the number of fully diluted

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Aug. 27, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

shares of GP Strategies common stock.

30. With respect to Jefferies' "*Selected Public Companies Analysis*" and "*Selected Transactions Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company and transaction Jefferies observed in its analyses.

31. The Proxy Statement fails to disclose the following concerning Jefferies' "*Equity Research*" analysis: (1) individual price targets observed by Jefferies in its analysis; and (2) the sources thereof.

32. The valuation methods, underlying assumptions, and key inputs used by Jefferies in rendering its purported fairness opinion must be fairly disclosed to GP Strategies shareholders. The description of Jefferies' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, GP Strategies shareholders are unable to fully understand Jefferies' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

33. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

34. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

35.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

36.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

37.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

38.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

39.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

40.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or

9

indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

42. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

43. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

44. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 27, 2021

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*